IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| **SPARTA INSURANCE COMPANY,** | * | |
| | * | |
| Plaintiff, | * | |
| | * | **CIVIL ACTION NO.** |
| vs. | * | |
| | * | |
| **ALABAMA TERMITE & PEST** | * | |
| **CONTROL, INC, its principal,** | * | |
| **KENNETH ESTES, and JAMES** | * | |
| **and MARY JEFFERSON** | * | |
| | * | |
| Defendants. | * | |

## PETITION FOR DECLARATORY JUDGMENT

## PARTIES

1.  The Plaintiff, SPARTA Insurance Company (hereinafter "SPARTA"), is a company incorporated and organized under the laws of the State of Connecticut, having its principal place of business in Hartford, Connecticut.

2.  The Defendant, Alabama Termite & Pest Control, Inc. (hereinafter "ATPC"), is a company incorporated and organized under the laws of the State of Alabama, having its principal place of business in Bessemer, Jefferson County, Alabama.

3.  The Defendant, Kenneth Estes, ATPC's principal, is an adult citizen of the state of Alabama and resides at 3865 Lee Roy Lane, Bessemer, Jefferson County, Alabama 35022.

4.  James and Marry Jefferson, husband and wife, are adult citizens of the state of Alabama, and their home, which is the subject of the underlying litigation, is located at 105 Cheshire Lane, Pelham, Shelby County, Alabama 35124.

## JURISDICTION AND VENUE

5.  SPARTA invokes this Court's jurisdiction based on diversity of citizenship pursuant to 28 U.S.C. § 1332, as the matter in controversy exceeds $75,000.00, exclusive of interest and costs, and because there exists complete diversity of citizenship among the Plaintiff and the Defendants.

6.  SPARTA seeks a declaration of rights pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq*.

7.  In a declaratory judgment action, the amount in controversy is the monetary value of the object of the litigation from the plaintiff's perspective. *Federated Mut. Ins. Co. v. McKinnon Motors*, 329 F. 3d 805, 807 (11th Cir. 2003). "A plaintiff satisfies the amount in controversy requirement by claiming a sufficient sum in good faith." *Id*. (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938)). Where an insurer seeks a determination that it has no duty to defend a separate underlying lawsuit, the court may take into account not only the recovery sought in the underlying lawsuit, but also "[t]he pecuniary value of the obligation to defend the separate lawsuit is properly considered in determining the existence of the jurisdictional amount." *Emplrs. Mut. Cas. Co. v. Huff*, 2017 U.S. Dist. LEXIS 122679, at *6 (N.D. Ala. Aug. 22, 2017) (quoting *Stonewall Ins. Co. v. Lopez*, 544 F. 2d 198, 199 (5th Cir. 1976)).

8.  The policies at issue in this declaratory judgment action provide a per occurrence liability limit of $1,000,000.00, which is inclusive of damages and the costs of defense. The amount claimed as damages by the Jeffersons (Plaintiffs in the underlying action in the Circuit Court of Jefferson County, Alabama), together with the projected costs of defending ATPC, exceed the statutory threshold of $75,000.00, exclusive of costs, attorneys' fees and interest. *See*

*Huff*, 2017 U.S. Dist. LEXIS 122679, at *6 (holding that the amount in controversy includes the cost of defense and indemnification arising from the underlying claim).

9. Venue is proper in the United States District Court for the Northern District of Alabama, Birmingham Division, pursuant to 28 U.S.C. 1391(a). A substantial portion of the events or omissions giving rise to this claim occurred in this judicial district. For instance, the Jeffersons' home, which is the subject of the underlying state court action, is located in Shelby County, Alabama. ATPC's principal place of business is located in Jefferson County, Alabama, and its principal, Kenneth Estes, also resides in Jefferson County, Alabama. Moreover, the Jeffersons' state court action is currently pending in the Circuit Court of Jefferson County, Alabama.

10. Jefferson County and Shelby County lie within the purview of the United States District Court for the Northern District of Alabama, Birmingham Division.

## FACTUAL ALLEGATIONS

### A. General Background

11. This matter involves insurance coverage questions arising out of a state court lawsuit filed by James and Mary Jefferson against ATPC.[1]

12. SPARTA provided ATPC with general liability insurance coverage from March 12th, 2010 to March 12th, 2012.

13. SPARTA is currently providing ATPC and its principal, Kenneth Estes, with a defense pursuant to a strict reservation of rights.

14. Based on the allegations in Jeffersons' state court complaint, the timing of the Jeffersons' alleged damages, the applicable law, and the language of the SPARTA policies,

---

[1] The Jeffersons' current complaint is attached hereto as Exhibit "A".

SPARTA contends that no coverage exists. Accordingly, SPARTA is seeking an adjudication that it does not owe ATPC a duty to defend or indemnify against the Jeffersons' underlying state court claims.

### B. Allegations in the Underlying Proceedings

15. The Jeffersons bought their home new while it was still under construction in 1993.

16. The builder retained ATPC to "pre-treat" the home while it was still under construction. ATPC's records indicate that ATPC only visited the home once while it was under construction. ATPC's records further indicate that an unspecified amount of .25% Demon TC termiticide mixture was applied to the Jeffersons' home during that visit.

17. After the Jeffersons' home was completed, the ATPC termite treatment and protection bond was transferred to the Jeffersons in 1993. Thereafter, the Jeffersons continued using ATPC for termite prevention until 2016.

18. In August of 2007, an ATPC salesman had the Jeffersons sign a new termite contract. According to the Jeffersons' complaint, the salesman misrepresented to them that Alabama law had changed and now required ATPC to limit its coverage for termite claims to $10,000.00. The contract also provided that ATPC would "Puncture all hollow masonry work and pressure treat same with toxic chemical…Void or drill or rod all earth fills adjoining building and poison soil…Drill or rod concrete slab floors and inject chemical barrier as needed…"

19. In May of 2016, the Jeffersons entered into a contract with Mike and Holly Strayer to sell their home. The home sale contract was contingent upon an inspection of the Jeffersons' home.

20. On June 6th, 2016, the Jeffersons' home was inspected in anticipation of the sale. During the inspection, termite-related property damage was found. The Strayers' notified the

Jeffersons' immediately via email, and the Jeffersons, in turn, notified ATPC of the possible termite-related damage in their home.

21. ATPC thereafter inspected the Jeffersons' home and noted that it needed to be re-treated. Based on its treatment records, ATPC appears to have encountered active termites during their inspection. ATPC applied termiticide to kill the live termites and made some minor repairs.

22. In light of the termite-related damage, the Strayers backed out of the home sale contract on June 10th, 2016.

23. The Jeffersons appear to have filed a complaint with the Alabama Department of Agriculture and Industries ("ADAI") after ATPC declined to make any more repairs and cited the termite bond's $10,000.00 limit of liability.

24. The ADAI sent an inspector to the Jeffersons' residence on June 29th, 2016. The inspector noted that not all of the termite-related damage had been repaired. The inspector also noted that he did not observe "all mechanics of subterranean termite treatment to the structure," and that ATPC did not have any records indicating that it had ever performed a comprehensive treatment on the Jeffersons' home.

25. In light of the inspector's findings, the ADAI ordered ATPC to return to the Jeffersons' residence and provide a comprehensive treatment of their home.

26. ATPC apparently complied and applied a comprehensive re-treatment to the Jeffersons' residence.

27. ATPC refused to make any further repairs to the termite-related damage to the Jeffersons' home, however.

28. As a result, the Jeffersons filed suit against ATPC and its principal, Kenneth Estes, on September 16th, 2016 in the Circuit Court of Jefferson County, Bessemer Division.

29. The Jeffersons' complaint alleges the following claims against ATPC: Fraudulent Misrepresentation/Suppression, including Promissory Fraud, Negligence, Recklessness, and Negligence Per Se, Negligent Hiring, Training, Supervision, and Retention, Breach of Contract, Civil Conspiracy, and Equitable Relief pursuant to the "Made Whole Doctrine."

30. The Jeffersons' complaint seeks compensatory damages, including mental anguish, punitive damages, equitable relief, and any other form of available relief.

## THE INSURANCE POLICIES

31. SPARTA issued two policies to ATPC with policy periods from March 12, 2010 through March 12, 2011,[2] and March 12, 2011 through March 12, 2012.[3]

32. The policies are nearly identical to one another. In fact, the only material difference is the 2011-2012 includes the Property Damage Extension for Inspections endorsement, whereas the 2010-2011 policy does not.

33. Each policy provides $1,000,000.00/occurrence for Bodily Injury and Property Damage Liability and a general aggregate limit of $3,000,000.00.

34. The following provisions and endorsements are relevant to this analysis:

## COMMERCIAL GENERAL LIABILITY COVERAGE FORM

**SECTION I - COVERAGES**
**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1. **Insuring Agreement**

    **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any

---

[2] Policy 011GL00980, attached hereto as Exhibit "B".
[3] Policy 011GL02035, attached hereto as Exhibit "C".

      "occurrence" and settle any claim or "suit" that may result. But:

      **(1)**    The amount we will pay for damages is limited as described in Section **III** - Limits of Insurance; and

      **(2)**    Our right and duty to defend ends when we have used up the applicable limits of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

      No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages **A** and **B**.

  **b.**    This insurance applies to "bodily injury" and "property damage" only if:

      **(1)**    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

      **(2)**    The "bodily injury" or "property damage" occurs during the policy period; and

[…]

  **d.**    "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

      **(1)**    Reports, all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

      **(2)**    Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

      **(3)**    Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

[…]

**2.**  **Exclusions**
This insurance does not apply to:
  **a.**  **Expected or Intended Injury**
    "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.
  […]
  **j.**  **Damage To Property**
    "Property damage" to:
    […]

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

[See Exhibit B at p. 12, Exhibit C at p. 14].

# PROPERTY DAMAGE EXTENSION FOR TREATMENT/RENEWAL

**A.** **COVERAGE**

    **1.** **Insuring Agreement**

We will pay, those sums which the insured becomes legally obligated to pay as damages because of "property damage" to "real property", caused by the infestation of: Subterranean Termites; Dry Wood Termites; Powder Post Beetles; Old House Borers; Wood Boring Beetles; and/or insects as specified in the "treatment contract", for such services, which occurs after the "actual treatment" and to which this insurance applies.

The amount we will pay as damages is limited as described in paragraph **B**. of this endorsement.

This replaces and is not in addition to any other "property damage" coverage that might apply under this policy.

    **2.** **Exclusions**

This insurance does not apply to:

    **a.** The expense of treatment, retreatment, inspection or re-inspection of any "real property".
    **b.** Any act, error or omission an insured committed with fraudulent, dishonest, criminal or malicious purpose or intent.
    **c.** Any "property damage" occurring before the "actual treatment" date as shown in your "treatment contract" or after the end of the policy period.
    **d.** Any "property damage" not caused by: Subterranean Termites; Dry Wood Termites; Powder Post Beetles; Old House Borers; Wood Boring Beetles; and/or other insects identified in the "treatment contract".
    **e.** Any spot or partial treatments.
    **f.** Any "property damage" to "real property" that has not had a "renewal inspection" within twenty four (24) months of your last "renewal inspection" or "actual treatment".

**B.** **LIMITS OF INSURANCE**

       This coverage is subject to the Each Occurrence and General Aggregate Limits shown in the Declarations of this policy and is included within, not in addition to, the policy limits.

       […]

**E.**    For the purposes of coverage provided by this endorsement, the following conditions are added to **Section IV - Commercial General Liability Conditions**. Coverage is effective only if all of the following conditions are met:

    **1.** You must complete a graph showing the areas of the "real property" illustrating treated and, untreated areas, the dimensions of the structure(s) or building(s), present and past infestation, and present and past damage. The graph must be attached to the "treatment contract."
    **2.** You must charge a fee for your services.
    **3.** Nothing in the "Treatment Contract" shall extend or broaden the scope of coverage afforded by this endorsement.
    **4.** You must maintain the "treatment contract" and all the written, detailed records of any and all work performed by you from the date the "actual treatment" started.

    We may examine your "treatment contract" and all information regarding the "actual treatment" and the "renewal inspection" of the "real property" at any time after the date of "actual treatment".

    Failure to maintain such records; including but not limited to the "Treatment Contract", information regarding the "actual treatment" of the "real property", any report required by statute, ordinance or regulation of any federal, state or local government, or other pertinent information regarding the "actual treatment" of the "real property"; and/or not make them available to us will result in the denial of coverage for any claim or suit.

    **5.** All contracts must be in writing and signed by you and your client. All work papers must contain the date(s) of all actions taken with respect to the "real property".

    […]

[See Exhibit B at pp. 32 to 33, Exhibit C at pp. 43 to 44].

## COUNT I

### SPARTA DOES NOT OWE ATPC OR KENNETH ESTES A DEFENSE OR INDEMNITY FOR ANY CLAIMS ARISING OUT OF THE JEFFERSONS' UNDERLYING STATE COURT ACTION

    35.    SPARTA incorporates paragraphs 1-34 as if fully set forth herein.

36. SPARTA asserts there is no insurance coverage afforded under any policy of insurance issued to ATPC by SPARTA for the claims and damages at issue in the underlying state court proceedings. A review of the Jeffersons' complaint, as well as the evidence gathered to date, reveals numerous coverage issues. As a result of the Jeffersons' allegations and the applicable policy language, the claims and resulting damages in the underlying state court action are not covered by the SPARTA policies.

37. First, the Jeffersons allege "bodily injury" claims in the form of "mental anguish" in their state court action. However, the Jeffersons' "bodily injury" claims manifested well outside of SPARTA's coverage period, which spanned from March 12th, 2010 to March 12th, 2012. The Jeffersons did not discover the active termites or termite damage to their home until June 6th, 2016—the date on which they received the inspection report via email from the Strayers. Accordingly, the Jeffersons' "bodily injury" claims are not covered under either of ATPC's SPARTA policies.

38. Second, none of the Property Damage Extension endorsements provide coverage for the Jeffersons' "property damage" claims. Specifically, the Jeffersons' allegations and underlying evidence establish that:

    a. ATPC inspected the Jeffersons' home in conjunction with the warranties and guarantees made in its termite treatment and protection bonds with the Jeffersons;

    b. Given that no termite damage was discovered until June 6th, 2016, there is no evidence that ATPC, or any other insured, failed to "identify the present or past existence of 'wood destroying organisms' in the area(s) [ATPC] inspected on the date [ATPC] inspected the 'real property' or 'property

      damage' existing prior to the inspection, described in the 'inspection contract'";

c. No "wood destroying organisms" were in existence at the time ATPC performed its inspections during the SPARTA coverage period;

d. No "property damage" caused by "wood destroying organisms" existed at the time of, or prior to, ATPC's inspections of the Jeffersons' property during the SPARTA coverage period;

e. No "property damage" caused by "wood destroying organisms" was visible, accessible and in existence at the time of ATPC's inspections during the SPARTA coverage period;

f. The Jeffersons' complaint alleges fraudulent, dishonest, and/or malicious purpose or intent on the part of ATPC;

g. ATPC failed to create and/or retain documents and records required by the policies, which is a violation of several conditions precedent to coverage under the various policy endorsements;

h. The documents created by ATPC failed to include the necessary information, signatures, and other requirements, as set out by the conditions precedent to coverage under the various policy endorsements;

i. Any alleged "property damage" occurred after the expiration of SPARTA's latest policy period;

39. Additionally, some or all of the allegations against ATPC and Estes do not amount to an "occurrence," as that term is defined by the policies and applicable law. Specifically, claims of intentional conduct do not meet the definition of an "occurrence." Likewise, at least a portion

of the alleged damages sought by the Jeffersons do not amount to "bodily injury" or "property damage," including but not limited to, any claim for equitable relief. To the extent that the Jeffersons seek damages for "bodily injury" or "property damage" caused by an occurrence during the policy periods mentioned above, there is no coverage available under the SPARTA policies issued to ATPC.

40. The exclusions set out above may also exclude some or all of the damages sought by the Jeffersons in the underlying state court action, including, but not limited to, the "Damage to Property" and the "Expected or Intended Injury" exclusions.

41. Finally, the entirety of both policies, including, but not limited to, any applicable definitions, are hereby incorporated by reference and are attached hereto as Exhibits "B" and "C".

**WHEREFORE, PREMISES CONSIDERED,** SPARTA seeks a declaration from this Court as follows:

A. That a bona fide, justiciable controversy exists between the parties which should be resolved;

B. That the subject SPARTA policies, and all amendments, provisions, endorsements and exclusions are clear and unambiguous;

C. That SPARTA does not have a duty to defend or indemnify ATPC or Kenneth Estes for any of the underlying claims alleged by James and Mary Jefferson; and

D. Granting SPARTA such other, further, and different relief to which it may be entitled.

**Respectfully Submitted,**

/s/ Allan S. Jones
ALLAN S. JONES (ASB-4458-E37A)
Attorney for SPARTA Insurance Company

**OF COUNSEL:**
**CARR ALLISON**
100 Vestavia Parkway
Birmingham, AL 35216
asjones@carrallison.com
T:  (205) 822-2006
F:  (205) 822-2057


**PLEASE SERVE DEFENDANTS VIA CERTIFIED MAIL AT**:

Alabama Termite and Pest Control, Inc.
1800 Fourth Ave. Southwest
Bessemer, AL 35022

Kenneth Neal Estes
3865 Lee Roy Lane
Bessemer, AL 35022

James and Mary Jefferson
105 Cheshire Lane
Pelham, AL 35124